UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| COREY DOYLE,<br>    Plaintiff, | CASE NO. 3:19-cv-901 (MPS) |
| v. | |
| ANTONIO SANTIAGO, et al.,<br>    Defendants. | OCTOBER 18, 2019 |

**INITIAL REVIEW ORDER**

Plaintiff Corey Doyle, incarcerated at the Corrigan-Radgowski Correctional Center in Uncasville, Connecticut, filed this case under 42 U.S.C. § 1983. The plaintiff names four defendants, Director of Security Antonio Santiago, Lieutenant Alexander, Hearing Officer Tracy King, and Warden Corsella. He contends that the defendants denied him due process by classifying him to the Security Risk Group ("SRG") Program and continuing him on that status for tattoos that were on his body when he previously was classified to and completed the SRG Program. The plaintiff seeks damages and an order that defendant Santiago return him to general population.

The Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing

*Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (per curiam)). Here, the plaintiff is proceeding *in forma pauperis.*

Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted).

"Although courts must interpret a pro se complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

I.  Allegations[1]

On February 15, 2018, the plaintiff was housed at Carl Robinson Correctional Institution

---

[1] On July 16, 2019, the Court informed the plaintiff that his complaint appeared to be missing a page, noting that page 8 ended with paragraph 8 and page 9 commenced with paragraph 15. The original complaint also appeared to omit paragraphs 28–36 and 53–60. The Court afforded the plaintiff 21 days to file a complete complaint and advised him that the Court would review the complaint in its current form if he failed to comply. The plaintiff's complete complaint was to be filed by August 6, 2019. On September 27, 2019, the plaintiff filed a Corrected Complaint. ECF No. 11. The Corrected Complaint still omits paragraphs 8-14, but it does include paragraphs 28–36 and 53–60; the Corrected Complaint does not include an attached Inmate Request Form, which was included in the original complaint. In this Ruling, the Court considers only the facts included in the Corrected Complaint.

as a level 2 prisoner. ECF No. 11. ¶ 1. He received a Class A disciplinary report for self-mutilation and was sent to the restrictive housing unit ("RHU"). *Id.* ¶ 2. Lieutenant Alexander told the plaintiff that he would be sent to the SRG Program for his tattoos. *Id.* ¶ 3. The plaintiff stated that he received the tattoos when he previously was in the SRG Program and complained that Lieutenant Alexander's actions were not fair. *Id.* ¶ 4. Lieutenant Alexander merely said, "life isn't fair, you will remain in RHU." *Id.* ¶ 5.

On February 22, 2018, the plaintiff attended an SRG hearing before Hearing Officer King. *Id.* ¶ 6. The plaintiff stated that the disciplinary report was for self-mutilation; he did not receive written notice of any charges for SRG affiliation. *Id.* ¶ 7. The plaintiff pleaded guilty. *Id.* ¶ 15. Officer King did not permit the plaintiff to express his views about admission to the SRG Program. *Id.* ¶ 16.

On February 29, 2018, the plaintiff was admitted to Phase 2 of the SRG Program. *Id.* ¶ 17. As he previously completed the SRG Program on August 14, 2015, the plaintiff must remain in the Program for two years before he can be returned to general population. *Id.* ¶ 18.

In Phase 2 of the Program at Walker Correctional Institution, the plaintiff was subjected to the following conditions. *Id.* ¶ 21. He was not eligible to earn good-time credit or for parole, transitional supervision, or other re-entry programs. *Id.* ¶ 22. He was not permitted to have the television, CD player, and hot pot that he purchased from the commissary. *Id.* ¶ 23. There was no hot water to prepare food he purchased from the commissary. *Id.* ¶ 24. He was only permitted to spend $35.00 per week in the commissary while inmates in general population could spend $75.00 per week and $150.00 during the holidays. *Id.* ¶ 25. He spent 23 hours per day in his cell with one hour of recreation on weekdays, and all day in his cell on weekends. *Id.* ¶ 26.

There was no indoor recreation, so inmates had to go outside in inclement weather or forfeit the recreation period. *Id.* ¶ 27. He could receive visits only from immediate family. *Id.* ¶ 28. He could shower only 3 times per week. *Id.* ¶ 29. Unlike inmates in general population, the plaintiff had no access to religious or educational programs. *Id.* ¶ 30. He was permitted only 3 phone calls per week. *Id.* ¶ 31. There were no rehabilitative programs. *Id.* ¶ 32. Inmates in Phase 2 had no access to books. *Id.* ¶ 33. Medical and mental health staff were insufficient to meet the needs of all the inmates. *Id.* ¶¶ 36-38. The plaintiff did not have access to a brush to clean the toilet in the cell. *Id.* ¶ 39.

The plaintiff is subjected to the following conditions in Phase 3 of the Program at Corrigan Correctional Center. *Id.* ¶ 42. He continues to be ineligible for good time credit, parole, halfway house placement, and transitional supervision. *Id.* ¶ 43. "Social contact between doors" is prohibited. *Id.* ¶ 44. There is no hot water in the cell to prepare food. *Id.* ¶ 45. The plaintiff can spend $40.00 per week in the commissary. *Id.* ¶ 46. He is permitted only 3 phone calls per day. *Id.* ¶ 47. He still can receive visits only from immediate family. *Id.* ¶ 48. He can now have a television and CD player but no hot pot. *Id.* ¶ 49. He is permitted one day of vigorous exercise in the gym. *Id.* ¶ 50. There are no programs or congregate religious services in Phase 3. *Id.* ¶¶ 51-52, 54. Inmates have no access to books. *Id.* ¶ 53. The plaintiff still has no access to a toilet brush. *Id.* ¶ 55. When there is a fight in the unit, the entire unit is locked down for a week and all inmates are punished by denying them commissary and showers. *Id.* ¶ 56. This does not happen after a fight in general population. *Id.* ¶ 57. Medical and mental health treatment is inadequate in Phase 3. *Id.* ¶ 61. Phase 3 inmates go to the medical unit for sick call only on certain days. *Id.* ¶ 62. So many inmates request medical attention that the

4

plaintiff does not get to go. *Id.* As in Phase 2, there is only one mental health worker for about 100 inmates. *Id.* ¶ 63. Cells of inmates in Phase 3 are searched more frequently than cells of prisoners in any other correctional facility. *Id.* ¶ 64. As a result of participation in the Program, the plaintiff suffers from paranoia, PTSD, depression, and anger issues. *Id.* ¶ 65.

II. Analysis

The plaintiff asserts the following claims for violation of his rights to substantive and procedural due process under the Fifth and Fourteenth Amendment, and Article first, sections 8 and 9 of the Connecticut Constitution: (1) Lieutenant Alexander issued a disciplinary report for self-mutilation, placed him in RHU for the tattoos, and conspired to place him in the SRG Program; (2) Officer King conducted a hearing on charges of self-mutilation and SRG affiliation without notice of the SRG affiliation charge and threatened him with maximum sanctions if he did not plead guilty; (3) Director Santiago did not conduct meaningful periodic reviews of the plaintiff's SRG designation; and (4) Warden Corsella cannot articulate a valid reason for imposing such harsh penalties. Plaintiff also challenges the constitutionality of the directive requiring him to serve two years in the SRG Program before he can be considered for return to general population.

Department of Correction records show that the plaintiff was sentenced on May 1, 2014. www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=323614 (last visited September 30, 2019). Thus, he was a sentenced prisoner at all time relevant to this action.

A. Fifth Amendment Claims

The plaintiff asserts federal due process claims under both the Fifth and Fourteenth Amendments. However, the defendants all are state actors. The Due Process Clause of the Fifth

5

Amendment protects only against actions by federal government actors. *See Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (Fifth Amendment's Due Process Clause only protects citizens against conduct of federal government officials, not state officials); *see also Pena v. Aldi*, No. 3:19-cv-124(KAD), 2019 WL 2193465, at *5 (D. Conn. May 21, 2019) (same). Thus, the plaintiff's due process claims are cognizable only under the Due Process Clause of the Fourteenth Amendment. Any Fifth Amendment due process claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      B.      <u>Procedural Due Process</u>

The plaintiff contends that his placement in the SRG Program violated his right to procedural due process. In *Wilkinson v. Austin*, 545 U.S. 209 (2005), the Supreme Court considered the process due inmates in connection with their classification and transfer to Ohio's highest security prison. Before any particular process is required, an inmate must demonstrate that he has a protected liberty interest in avoiding the classification at issue. *Id.* at 221 (before invoking procedural protections of the Due Process Clause, inmate must establish deprivation of an interest in life, liberty, or property). The United States Constitution does not create a liberty interest in avoiding transfer to more adverse conditions of confinement. *Id.* (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)).

A liberty interest may arise under state regulations, but only if the restraint imposed "while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 222-23 (quoting *Sandin v. Conner*, 515 U.S. 472, 483–484 (1995) (internal quotation marks omitted)). Thus, the Court

must consider the nature of the restrictions the plaintiff faced in the SRG Program and the severity of those conditions in relation to the ordinary incidents of prison life, not any specific procedural requirements in the prison directives. *Id.* at 223 (citing *Sandin*, 515 U.S. at 484).

The Second Circuit has held that the *Sandin* analysis should be applied to determine whether placement in non-punitive administrative segregation implicates a liberty interest. *Arce v. Walker*, 139 F.3d 329, 334-35 (2d Cir. 1998). To determine whether conditions of segregated confinement constitute an atypical and significant hardship, the district court should consider the duration of the inmate's confinement in segregation as well as the conditions of segregated confinement. *Palmer v. Richard*, 364 F.3d 60, 64 (2d Cir. 2004).

The plaintiff alleges that, because this is his second time in the SRG Program, he must remain in the Program for two years before he can be considered for return to general population. Doc. No.11 ¶ 18. He describes the conditions he was and is subjected to in Phases 2 and 3 of the Program. The Second Circuit had held that confinement in segregation for more than 305 days satisfied the *Sandin* standard. *See Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) (citation omitted). As the plaintiff alleges that he must remain in the SRG program for two years, the Court will assume, for purposes of this review, that he has a protected liberty interest and consider whether he was afforded all required process.

In *Hewitt v. Helms*, 459 U.S. 460 (1983), the Supreme Court considered the process required to place an inmate in administrative segregation. The inmate "must merely receive some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." *Id.* at 476; *see also Wilkinson*, 545 U.S. at 229 (*Hewitt* sets forth the standard of

7

due process for transfer to administrative segregation as some notice of charges and opportunity to be heard). The hearing, whether formal or informal, must occur within a reasonable time following the inmate's transfer to administrative segregation. *Id.* at 476 & n.8.

The plaintiff alleges that he received one disciplinary report for self-mutilation and one hearing on that disciplinary report. He did not receive a disciplinary report for SRG Affiliation or a classification hearing to consider placement in the SRG Program. When he informed Officer King of this fact, she merely stated that he could not receive two disciplinary reports for the same action and proceeded with the hearing. ECF No. 11 at 19.

Department of Correction Administrative Directive 6.14, Section 7(B)(4) provides that, when an inmate receives a disciplinary report for the charge of SRG Affiliation, the disciplinary hearing also serves as the classification hearing. Directive 6.14, available at https://portal.ct.gov/DOC/AD.AD-Chapter-6. Otherwise, the Unit Administrator may initiate the designation process by following the notice and hearing procedures set forth in Administrative Directive 9.5, Code of Penal Discipline and Section 6 of Directive 6. Directive 6.14, Section 7(A). As the plaintiff alleges that he received no classification hearing, received no notice that the disciplinary hearing would also be a classification hearing, and was not permitted to address the classification issue, he states a plausible claim that he was not afforded procedural due process in connection with his designation.

In addition, the plaintiff is entitled to a meaningful periodic review of his placement. These reviews are needed to ensure that segregated confinement is not pretextual. *Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). "[A]dministrative segregation may not be used as a pretext for indefinite confinement[, so] … periodic reviews [cannot be] a sham; the reviews must

8

be meaningful and not simply perfunctory." *Tavares v. Amato*, 954 F. Supp. 2d 79, 96 (N.D.N.Y. 2013) (citations and internal quotation marks omitted). The plaintiff alleges that Director Santiago conducted only perfunctory reviews, not checking any boxes on the forms and providing the same boilerplate report with respect to all inmates. This allegation is sufficient to state a plausible due process claim against Director Santiago for lack of meaningful reviews. The procedural due process claims will proceed against defendants King and Santiago.

      C.      <u>Substantive Due Process</u>

The plaintiff also characterizes his placement in the SRG Program as violating his right to substantive due process. "[W]here another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claim under that explicit provision and not the more generalized notion of substantive due process." *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000) (quoting *Conn v. Gabbert*, 526 U.S. 286, 293 (1999) (internal quotation marks omitted)). If the plaintiff's confinement in the SRG Program were conscience-shocking, it would violate the Eighth Amendment. Thus, his claim should be considered under the Eighth Amendment, not the Substantive Due Process Clause. *See Smith v. Annucci*, No. 6:18-cv-6261 EAW, 2019 WL 539935, at *7-8 (W.D.N.Y. Feb. 11, 2019) (rejecting substantive due process claim based on confinement in administrative segregation). The substantive due process claim is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

In addition, even if the Court were to consider the merits of the claim, it should be dismissed. "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense … but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d

9

Cir. 1994) (internal citations omitted). "To establish a violation of substantive due process rights, a plaintiff must demonstrate that the state action was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Okin v. Village of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 431 (2d Cir. 2009) (quoting *City of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). In *Sandin v. Conner*, the Supreme Court provided only two examples of conduct found sufficiently egregious: transfer to a mental hospital and the involuntary administration of psychotropic drugs. *Sandin*, 515 U.S. at 479 n.4; *see also Parson v. Miller*, No. 9:16-CV-167(DNH/CFH), 2018 WL 4233810, at * 10 (N.D.N.Y. May 25, 2018) ("very few conditions of prison life are 'shocking' enough to violate a prisoner's right to substantive due process") (internal quotation marks and citation omitted), *report and recommendation adopted*, 2018 WL 4228427 (N.D.N.Y. Sept. 5, 2018).

The plaintiff describes the conditions of his confinement in Phases 2 and 3 of the SRG Program. Other courts have not considered such confinement sufficiently shocking to support a substantive due process claim. *See, e.g.*, *Samms v. Fischer*, No. 9:10-CV-349(CTS/GHL), 2011 WL 3876528, at *1, 9, 12 (N.D.N.Y. Mar. 25, 2011) (neither inmate's administrative segregation status for 22 months nor conditions of confinement alleged, including denial of congregate religious services or classes, exercising one hour per day in small area, and denial of underwear and socks, are sufficiently conscience-shocking or oppressive in constitutional sense), *report and recommendation adopted*, 2011 WL 3876522 (N.D.N.Y. Aug. 31, 2011). Thus, the plaintiff's allegations do not support a substantive due process claim.

D.   Warden Corsella

The plaintiff asserts a claim against Warden Corsella for imposing harsh penalties on him

without articulating a reason. Warden Corsella is a supervisory official.

> To state a claim for supervisory liability, a plaintiff must establish that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the constitutional violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which the unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference … by failing to act on information indicating that unconstitutional acts were occurring.

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Merriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989) (to impose supervisory liability prisoner must allege that official had actual or constructive notice of unconstitutional practices and demonstrated gross negligence or deliberate indifference by failing to act).

The plaintiff does not mention Warden Corsella in his statement of facts. He alleges only that Officer King found him guilty and recommended SRG placement and that Director Santiago failed to conduct appropriate reviews. Absent any allegations supporting any of the possible bases for supervisory liability, the claim against Warden Corsella is dismissed.

E.    Lieutenant Alexander

The plaintiff contends that Lieutenant Alexander issued a disciplinary report for self-mutilation and placed him in RHU for the tattoos he received during his prior classification to the SRG Program and conspired to place him in the SRG Program.

The plaintiff alleges that Lieutenant Alexander should not have issued the disciplinary report for self-mutilation and sent him to RHU because he had not been charged for having tattoos since he was in SRG Program for the first time. The Court can discern no basis for a

11

claim against Lieutenant Alexander based on this allegation. The charge was not false, as the plaintiff admits having tattoos. The plaintiff alleges that he received the disciplinary charge on February 15, 2018 and attended the disciplinary hearing on February 22, 2018. Thus, he remained in RHU at the instigation of Lieutenant Alexander for only 7 days. The plaintiff does not describe the conditions in RHU. However, he has no constitutional right to avoid the more restrictive housing conditions presumably associated with RHU placement for this short time. *See Sandin*, 515 U.S. at 485-86 (more restrictive conditions for short period not unconstitutional).

The plaintiff also alleges that Lieutenant Alexander conspired to have him placed in the SRG Program. He alleges only that Lieutenant Alexander commented that the plaintiff would return to the SRG Program when he sent him to RHU. To prevail on a claim for conspiracy under section 1983, the plaintiff must prove three elements: (1) the existence of an agreement between two state actors or a state actor and a private party, (2) that the members of the conspiracy acted in concert to inflict an unconstitutional injury on the plaintiff, and (3) an overt act taken in furtherance of the conspiracy. *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). The plaintiff does not allege any facts to support the existence of an agreement to support a conspiracy claim. His conspiracy claim is therefore dismissed.

Further, under the doctrine of intracorporate conspiracy, "officers, agents and employees of a single corporate or municipal entity are legally incapable of conspiring together." Thus, they cannot be liable for conspiracy. *Blue v. City of New York*, No. 16-CV-9990(VSB), 2018 WL 2561023, at *9 (S.D.N.Y. June 4, 2018) (citing *Hartline v. Gallo*, 546 F.3d 95, 99 n.3 (2d Cir. 2008) (affirming application of intracorporate conspiracy doctrine in conspiracy claim under

12

42 U.S.C. § 1985(3))). Although the Second Circuit has not determined whether the intracorporate conspiracy doctrine also applies to section 1983 conspiracy claims, district courts considering the issue have ruled that the doctrine applies in section 1983 conspiracy cases as well. *Id,* 2018 WL 2561023, at *9 n.10 (citing cases). As all defendants are correctional officials, the plaintiff's conspiracy claim is dismissed under the intracorporate conspiracy doctrine as well. Accordingly, all claims against Lieutenant Alexander are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      F.     <u>Challenge to Directive</u>

Directive 6.14, section 19, provides that an inmate who is designated to the SRG Program for a second time must complete all programs and remain discipline-free for two years before he will be considered for removal from the SRG Program. The plaintiff contends that this policy is harsh and unconstitutional.

When considering the validity of a prison regulation, the court applies the four factors set forth in *Turner v. Safley*, 482 U.S. 78 (1987). First, the court determines whether there is a "valid, rational connection" between the regulation and the legitimate government interest put forward to justify the regulation. *Id.* at 89. Second, the court must consider whether inmates have an alternative means of exercising the right burdened by the regulation. *Id.* at 90. Third, the court evaluates the impact accommodating the inmates' right would have on correctional officers, other inmates, and prison resources. *Id.* Fourth, and finally, the court considers how the regulation compares to proposed alternatives. *Id*. *See also Johnson v. Goord*, 445 F.3d 532, 535 (2d Cir. 2006).

At this stage of litigation, the defendants have not yet had an opportunity to address the

13

plaintiff's claims. Section 19 does not specify the government interest advanced by the two-year requirement. Thus, the Court cannot properly evaluate this claim. The requirement does, however, appear to be inconsistent with the requirement in section 9, that every inmate's designation as an SRG Member be reviewed at least every six months "to determine whether the inmate should remain on this status." Directive 6.14, section 9. If the plaintiff could not be released from the SRG Program for two years, any periodic review during that time would not be meaningful. *See Taveras*, 954 F. Supp. 2d at 96 (explaining that periodic reviews must be meaningful and not perfunctory). The Court will consider a due process challenge to section 19 in conjunction with the due process challenge regarding periodic reviews.

The plaintiff's claim may also be viewed as an Eighth Amendment challenge to the requirement that he remain in the SRG Program for two years. The Eighth Amendment prohibition against cruel and unusual punishment includes a prohibition against inhumane conditions of confinement. *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). The standard for a conditions of confinement claim contains both objective and subjective components. Objectively, "the prison officials' transgression" must be "sufficiently serious." *Id.* Subjectively, "the officials [must have] acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Id.* (quoting *Farmer*, 511 U.S. at 834).

"Under the objective element, while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities.'" *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Prison officials, therefore, cannot "deprive inmates of their 'basic human needs—

e.g., food, clothing, shelter, medical care, and reasonable safety.'" *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). To determine whether a deprivation is sufficiently serious, the court evaluates the conditions "in light of contemporary standards of decency." *Jabbar v. Fischer,* 683 F.3d 54, 57 (2d Cir. 2012) (citation and internal quotation marks omitted). Conditions of confinement may be aggregated to rise to the level of a constitutional violation "only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal quotation marks omitted)).

The plaintiff describes the following conditions in the SRG Program: inability to earn good-time credit; ineligibility for parole, transitional supervision, or other re-entry programs; restrictions on property; lack of hot water to prepare food purchased from the commissary; limitation on commissary spending; confined to cell for 23 hours per day; only one hour of outdoor recreation per weekday; no, or limited, indoor recreation; visits only from immediate family; three showers per week; limited telephone calls; no access to books; no programming; insufficient medical and mental health staff assigned to unit; no brush to clean toilet; and more frequent cell searches. ECF No. 11 ¶¶ 21-39, 42-

Although the conditions described may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional. In *Pagan v. Dougherty*, No. 3:18-cv-1668(VLB), 2019 WL 2616975 (D. Conn. June 26, 2019), the court considered allegations that the prisoner plaintiff was subjected to limitations on telephone use, visits from friends and family, eligibility for parole, access to educational and vocational services, and showers. He also

15

was confined in his cell for 23 hours per day. The court concluded that these conditions did not support an Eighth Amendment claim for inhumane conditions of confinement. *Id.* at *6 (citing cases); *see also Graham v. Perez*, 121 F. Supp. 2d 317, 322-23 (S.D.N.Y. 2000) (finding no serious deprivation resulting from limiting out-of-cell exercise, deprivation of job opportunities, limiting location and content of meals, denying in-cell hot water and electrical outlets, providing inadequate lighting, limiting recreation, limiting access to newspapers, and limiting personal telephone calls).

The plaintiff references more frequent cell searches. Prison cell searches are actionable under the Eighth Amendment only if they lack any legitimate penological interest and are intended solely to harass the inmate. *See Davis v. Collado*, No. 16-CV07139(KMK), 2018 WL 4757966, at *13 (S.D.N.Y. Sept. 30, 2018) (citing *Jones v. Harris*, 665 F. Supp. 2d 384, 395 (S.D.N.Y. 2009)). The plaintiff's allegation that he was subjected to more frequent cell searches than inmates in general population does not state an Eighth Amendment violation.

The plaintiff also stated that there are too few medical and mental health staff members assigned to the SRG unit. He alleges that medical staff see inmates only one day per week and sometimes he cannot see medical staff. He has not, however, identified any serious medical need that was not treated.

As the plaintiff has not alleged facts suggesting that he was denied any basic human needs, he fails to state a plausible Eighth Amendment claim.

G.  State Law Claims

The plaintiff also brings his due process claims under Article first, sections 8 and 9 of the Connecticut Constitution. As explained below, these sections do not give rise to private rights of

16

action and the Court declines to exercise supplemental jurisdiction over the state law claims.

Article first, section 8 provides: "No person shall be … deprived of life, liberty or property without due process of law…." Conn. Const. art. 1, § 8. The Connecticut Supreme Court has not recognized a private right of action under Article first, section 8. *See Gothberg v. Town of Plainfield*, 148 F. Supp. 3d 168, 187-88 (D. Conn. 2015) (declining to exercise supplemental jurisdiction over state constitutional claim under Article first, section 8 because decision to recognize private right of action under this section raises novel or complex issue of state law); *see also Doe v. Mastroloni*, No. 3:14-cv-718(CSH), 2016 WL 593439, at *17 (D. Conn. Feb. 1, 2016) (declining to exercise supplemental jurisdiction over state constitutional claims, including violation of Article first, section 8 where state courts have declined to recognize a private right of action) (citing cases). The Court declines to exercise supplemental jurisdiction over the plaintiff's claim for violation of Article first, section 8.

Article First, section 9 provides that "[n]o person shall be arrested, detained or punished except in cases clearly warranted by law." As the provision references punishment, the plaintiff appears to assume that it applies in this case. In *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998), the Connecticut Supreme Court recognized a private right of action under Article first, sections 7 and 9 for illegal searches and seizures of a private home. The court cautioned, however, that the holding "does not mean that a constitutional cause of action exists for every violation of our state constitution. *Id.* at 47, 710 A.2d at 700.

The Connecticut Supreme Court has not applied section 9 in the context of a prisoner case relating to conditions of confinement and the Connecticut Superior Court had declined to do so in at least one case. *See Torres v. Armstrong*, No. CV990427057S, 2001 WL 1178581, at *6

17

n.6 (Conn. Super. Ct. Sept. 6, 2001) (declining to recognize claim for damages under Article first, section 9 for housing inmates with mental health problems in same protective custody unit as plaintiff where plaintiff has not pursued remedies with claims commission or under federal law). Absent clear authorization of a private right of action under these facts, the Court declines to exercise supplemental jurisdiction over plaintiff's claim. *See* 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raises a novel or complex issue of State law….").

III.   Conclusion

All federal claims against defendants Alexander and Corsella, the federal substantive due process claim, and any Eighth Amendment claim are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The Court declines to exercise supplemental jurisdiction over the plaintiff's state constitutional claims. The case will proceed on the Fourteenth Amendment claim for denial of procedural due process against defendants King and Santiago, including the due process challenge to Directive 6.14, section 19.

The Court enters the following orders:

(1)   **The Clerk shall** contact the Department of Correction Office of Legal Affairs to ascertain the service or current work address for defendants King and Santiago, mail a waiver of service of process request packet containing the Complaint to them at the addresses provided within **twenty-one (21) days** of this Order, and report to the court on the status of the waiver requests on the thirty-fifth day after mailing. If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on

the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint on defendants King and Santiago in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within **twenty-one (21) days** from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) **The Clerk shall** send the plaintiff a copy of this Order.

(4) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver form is sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within **seven months (210 days)** from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated.   The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).  Therefore, discovery requests must be served on defendants' counsel by regular mail.

(11) **The Clerk shall** immediately enter the Standing Order Re: Initial Disclosures concerning cases initiated by self-represented inmates and shall send a copy to the plaintiff.

**SO ORDERED** this 18th day of October 2019 at Hartford, Connecticut.

/s/
Michael P. Shea
United States District Judge